**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**W. T. RAWLEIGH CO., et al., Defendants-Appellees.**

**No. 12394.**

United States Court of Appeals
Seventh Circuit.

May 18, 1959.

Robert Tieken, U. S. Atty., Charles R. Purcell, Jr., Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, D. Arthur Connelly, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellant.

Howard P. Robinson, Kenneth F. Burgess, H. Blair White, Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellee.

Before PARKINSON and KNOCH, Circuit Judges, and WHAM, District Judge.

KNOCH, Circuit Judge.

Defendants were indicted in two counts. Count I charged conspiracy in violation of 18 U.S.C. § 371, to violate Secs. 2800(a)(1), 3072, 3111, 3115(a) and 3116 of the Internal Revenue Code of 1939, 26 U.S.C. §§ 2800(a)(1), 3072, 3111, 3115(a), 3116 and Title 26, Code of Federal Regulations (1949) Sec. 182.864 by obtaining and use of specially denatured alcohol in the manufacture and sale of two liquid medicines for internal use, and defrauding the United States of the tax due. Count II charged the corporate defendant and five of the individuals named in Count I with withdrawal and use of specially denatured alcohol in the manufacture of liquid medicines for internal use [1] without payment of the tax due.

On motion of the defendants, the District Court dismissed the indictment. The appeal is taken by the Government pursuant to the Criminal Appeals Act, as amended, 18 U.S.C. § 3731.

The motion to dismiss was based primarily on the ground that the fundamental criminal statute Section 3072, and the statute it implements, Sec. 3070(a), do not apply to the denatured alcohol defendants are charged with using and conspiring to use, and that Regulation 182.864 is invalid.[2]

---

1. This was admitted for purposes of the motion to dismiss only.

2. "§ 3070. Withdrawal from bond tax free.

"(a) For industrial use. Domestic alcohol of such degree of proof as may be prescribed by the Commissioner, and approved by the Secretary, may be withdrawn from bond without the payment of internal revenue tax, for use in the arts and industries, and for fuel, light, and power, provided said alcohol shall have been mixed in the presence and under the direction of an authorized Government officer, after withdrawal from the distillery warehouse, with methyl alcohol or other denaturing material or materials, or admixture of the same, suitable to the use for which the alcohol is withdrawn, but which destroys its character as a beverage and renders it unfit for liquid medicinal purposes; such denaturing to be done upon the application of any registered distillery in denaturing bonded warehouses specially designated or set apart for denaturing purposes only, and under conditions prescribed by the Commissioner with the approval of the Secretary.

"The character and quantity of the said denaturing material and the conditions upon which said alcohol may be withdrawn free of tax shall be prescribed by the Commissioner, who shall, with the approval of the Secretary make all necessary regulations for carrying into effect the provisions of this subsection.

"Distillers, manufacturers, dealers and all other persons furnishing, handling or using alcohol withdrawn from bond under the provisions of this section shall keep such books and records, execute such bonds and render such returns as the Commissioner, with the approval of the Secretary, may by regulation require. Such books and records shall be open at all times to the inspection of any internal revenue officer or agent."

"§ 3072. Unlawful use or concealment of denatured alcohol.

"Any person who withdraws alcohol free of tax under the provisions of section 3070(a) and regulations made in pursuance thereof, and who removes or conceals same, or is concerned in removing, depositing or concealing same for the purpose of preventing the same from being denatured under governmental supervision, and any person who uses alcohol withdrawn from bond under the provisions of said section for manufac-

We need not discuss the other sections allegedly violated as these are dependent on a showing of violation of Sec. 3072 or Regulation 182.864.

In dismissing the indictment, the District Judge referred to a similar case which had been settled on a civil basis. The government lists, as a contested issue in this case, the question whether the action of the District Court in dismissing an indictment, against defendants not involved in the instant case, was a sufficient ground for dismissal of this indictment. The District Judge said that this was a criminal action to collect civil damages. As we agree with the District Court that the indictment fails to charge a crime, we do not reach that question.

There is no element here of misuse of dangerous or poisonous ingredients, but merely of alleged evasion of tax.

Alcohol when produced is "unadulterated". Denatured alcohol may be rendered poisonous and thus be "completely denatured", or merely distasteful and nauseating, and thus be "specially denatured". We are here concerned only with specially denatured alcohol.

Section 3072, as indicated, provides penal sanctions in connection with Sec. 3070(a) of the Code. A violation of Sec. 3072 must involve alcohol denatured under Sec. 3070(a).

█ It is axiomatic that criminal statutes must be strictly construed. United States v. Wiltberger, 1820, 5 Wheat. 76, 18 U.S. 76, 95–96, 5 L.Ed. 37.

A brief historical review of the legislation before us may be helpful.

As early as 1868, laws were designed to protect the tax on distilled spirits, which becomes due immediately the spirits come into existence. These laws, controlling the production, storage, and withdrawal of distilled spirits, developed words of art. The Act of 1868 (15 Stat. 125) permitted production of alcohol only in "registered" distilleries which had to be identified by a displayed sign (15 Stat. 132).

Prior to 1906 we also had "fruit" distilleries which were limited to distilling from specified fruits, unlike the "registered" distilleries which could distill from grain, starch, molasses, sugar, etc., and which were authorized to produce spirits of any kind and proof, including "alcohol", defined as having a proof of 160 degrees or more.[3]

The tax on distilled spirits was not paid until the spirits were withdrawn from storage—a "distillery warehouse" in which they were placed immediately after production, under government lock from which they could not be taken or "withdrawn from bond," without payment of the tax. Taney v. Penn Nat. Bank, 1914, 232 U.S. 174, 34 S.Ct. 288, 289, 58 L.Ed. 558. The product of

turing any beverage or liquid medicinal preparation, or knowingly sells any beverage or liquid medicinal preparation made in whole or in part from such alcohol, or knowingly violates any of the provisions of section 3070(a) or 3073, or (except as provided in section 3073) who shall recover or attempt to recover by redistillation or by any other process or means, any alcohol rendered unfit for beverage or liquid medicinal purposes under the provisions of section 3070(a), or who knowingly uses, sells, conceals, or otherwise disposes of alcohol so recovered or redistilled, shall on conviction of each offense be fined not more than $5,000, or be imprisoned not more than five years, or both, and shall, in addition, forfeit to the United States all personal property used in connection with his business, together with the buildings and lots or parcels of ground constituting the premises on which said unlawful acts are performed or permitted to be performed."

"Sec. 182.864 General. Medicinal preparations and flavoring extracts used for internal purposes, may not be manufactured with specially denatured alcohol where any of the alcohol remains in the finished product. Labels, cartons, and advertising matter used in connection with external preparations manufactured with specially denatured alcohol shall not bear any reference for internal use or prescribe any internal dosage."

3. 26 C.F.R. Sec. 182.6 (1949).

"fruit" distilleries went into a "special bonded warehouse."

In 1906 (34 Stat. 217) Congress permitted tax free withdrawal of alcohol from bond for industrial use provided that after withdrawal from the distillery warehouse, it be mixed with a denaturing material which destroyed its character as a beverage and rendered it unfit for liquid medicinal purposes. The mixing was to be done on application of any registered distillery in denaturing bonded warehouses specially set apart for denaturing purposes only. This provision (Sec. 1) later became Sec. 3070(a). Sec. 2 providing criminal sanctions for its violation became Sec. 3072. At that time only registered distilleries could produce alcohol for denaturation.

In 1907, Congress provided for a new type of distillery: the "industrial distillery" and the "central denaturing bonded warehouse." These were separate and distinct from the "registered" distilleries, and were limited in capacity.

In 1913, Congress created (38 Stat. 199) industrial distilleries of unlimited capacity, and "central distilling and denaturing plants." This legislation required that the denatured alcohol be rendered, not unfit for liquid medicinal purposes, as in the 1906 Act which still applied to "registered" distilleries, but only "unfit for use as an intoxicating beverage." The Commissioner's annual report to Congress apprised that body that he was permitting use of denatured alcohol for liquid medicinal preparations under the 1913 Act.

In 1919 the National Prohibition Act (41 Stat. 305) 27 U.S.C.A. § 1 et seq., was adopted, which in Title III created a new class of distillers: "industrial alcohol plants" which were permitted to produce and denature alcohol free of tax provided it was rendered unfit for use as an intoxicating beverage,[4] the standard used in the 1913 Act.

Registered distillers ceased operation during Prohibition until 1936, when Congress authorized them to produce distilled spirits, but only those of insufficient proof to constitute "alcohol",[5] so that their product might not be used competitively in the industrial alcohol market.[6]

When the registered distilleries were prohibited from producing alcohol, Sec. 3070(a) was rendered inoperative with respect to denaturation of alcohol. With Sec. 3070(b), Sec. 3070(a) still governed denaturation of rum. In 1942 to alleviate the shortage of alcohol, because industrial alcohol plants could not meet the wartime demand, Congress permitted registered distilleries to produce alcohol,[7] but in 1950 specifically prohibited withdrawal of such alcohol for denaturation,[8] thus again rendering Sec. 3070(a) inoperative with respect to denaturation of alcohol.

The 1913 Act was not expressly repealed, but it was not embodied in the Internal Revenue Code of 1939. As indicated, Secs. 1 and 2 of the 1906 Act became Secs. 3070(a) and 3072 of Part I, Subchapter C. Title III of the 1919 Act became Part II of the 1939 Code.

■ The alcohol with which we are here concerned was denatured in an "industrial alcohol plant," under authority of Secs. 3100 et seq. where it is rendered "unfit for use as an intoxicating beverage." Under the 1939 Code the industrial alcohol plant system has operated as a separate and completely integrated system, with alcohol which it alone could produce, with its own standard of denaturation—the same as that set out in the 1913 and Prohibition Acts. The Commissioner has approved various formulae of tax free denaturation of alcohol for use in pharmaceuticals.

Sec. 3070(a) applies to alcohol withdrawn from a distillery warehouse on application of a "registered" distillery and

---

4. Sec. 10, subsequently Secs. 3102 & 3109, Internal Revenue Code of 1939, 26 U.S. C.A. §§ 3102, 3109.

5. 49 Stat. 1946, subsequently Sec. 2883.

6. House Report No. 1438, 81st Congress, 2nd session, 1950.

7. 56 Stat. 17, 56 Stat. 187.

8. 64 Stat. 9.

denatured in a "denaturing bonded warehouse" so as to be unfit for beverage and liquid medicinal purposes. As Sec. 3070 (a) is not applicable to the alcohol with which we are concerned, Section 3072, which involves alcohol withdrawn for denaturation under Sec. 3070(a) is not violated.

The government cites United States v. J. R. Watkins, D.C.Minn.1954, 120 F. Supp. 154, in support of its interpretation of the term "registered" distillery as including all distilleries, registered or otherwise. We have studied the opinion in that case, and must respectfully differ from the conclusion that "registered" is not here a word of art.

The government urges a construction of Secs. 3070(a) and 3072 to include denatured alcohol from industrial alcohol plants, which we find forced and untenable.

Section 3072 has not made use of denatured alcohol in internal medicines a crime. Section 3072 does not refer to denatured alcohol, but only to alcohol withdrawn for denaturation, under the provisions of Sec. 3070(a), and then removed or concealed "for the purpose of preventing the same from being denatured * * *"; or used without denaturation in manufacturing beverage or liquid medicinal preparation; or knowingly sold in such preparation; or attempted to be recovered; or used after such recovery or redistillation. Sec. 3072 applies to alcohol which has not been denatured or which has been recovered after denaturation. The indictment clearly alleges use of "specially denatured" alcohol.

■ Cited as authority for Regulation 3, Sec. 182.864, are Sections 3070, 3109, 3111 & 3114, of which only 3070(a) deals with use of denatured alcohol in medicinal preparations. Sec. 3070(a) provides for denaturation rendering the alcohol "unfit for liquid medicinal purposes." This regulation would purport improperly to exempt external liquid medicinal purposes from the operation of the Statute. Commissioner of Internal Revenue v. Landers Corp., 6 Cir., 1954, 210 F.2d 188, 191.

In any case, Sec. 3070(a) authorizes regulations only for carrying into effect the provisions of Sec. 3070(a). The industrial alcohol plant system is authorized by Secs. 3100 et seq. Further, Sec. 3124(a)(6) defines "regulation" as "any regulation prescribed by the Commissioner * * * for carrying out the provisions of this part, * * *" Sec. 3070 is in Part I, Chapter 26, Subchapter C of the Internal Revenue Code. Secs. 3100 et seq., under which the alcohol here involved was denatured, appear in Part II, as does Sec. 3124(a)(6). The standard set up in Sec. 3102 is "unfit for use as an intoxicating beverage." Accordingly Sec. 182.836, Title 26, Code of Federal Regulations, 1949, does provide: "Liquid products containing specially denatured alcohol must be unfit for use as beverages or for intoxicating liquor purposes * * *." A regulation prohibiting all internal use would exceed the Commissioner's authority. We agree with the District Judge that Sec. 182.864, of Regulation 3 is invalid. Manhattan General Equipment Co. v. Commissioner, 1936, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528; Helvering v. Powers, 1934, 293 U.S. 214, 224, 55 S.Ct. 171, 79 L.Ed. 291.

Affirmed.

PARKINSON, Circuit Judge (concurring).

The rule is inherent in our system of criminal jurisprudence that a penal statute must be strictly construed. It is for the legislature, and not the court, to define a crime and ordain its punishment. Such a statute cannot be extended by intendment and no act can be punished thereunder unless clearly within its terms. Todd v. United States, 1895, 158 U.S. 278, 282, 15 S.Ct. 889, 39 L.Ed. 982;

United States v. Weitzel, 1918, 246 U.S. 533, 543, 38 S.Ct. 381, 62 L.Ed. 872; Yates v. United States, 1957, 354 U.S. 298, 304, 77 S.Ct. 1064, 1 L.Ed.2d 1356.

I agree that 26 C.F.R. § 182.864 is invalid as it is not authorized by § 3070 (a) nor any section of the Industrial Alcohol Plants Act, § 3100 et seq., and is not consistent with any statute under which the Government claims it was promulgated. McCeney v. District of Columbia, 1956, 97 U.S.App.D.C. 282, 230 F.2d 832, 835. A regulation cannot amend a statute. Miller v. United States, 1935, 294 U.S. 435, 440, 55 S.Ct. 440, 79 L.Ed. 977. Therefore, the sole remaining question, under the contested issues as formulated by the Government, is whether the indictment is valid or invalid under § 3072.

This section applies only to alcohol which has been withdrawn for denaturation but never denatured, and alcohol which has been recovered after denaturation. Thus if one uses alcohol, withdrawn tax free and prior to denaturation or recovered after denaturation, for manufacturing any beverage or liquid medicinal preparation or sells same he commits an offense as defined by § 3072. In order for this statute to make it a crime to so use denatured alcohol or sell a beverage or liquid medicinal preparation made therefrom we would have to judicially legislate by enlarging the statute and inserting the word "denatured" in at least two places therein. This we cannot do even to supply inadvertent omissions, Iselin v. United States, 1926, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566; but to do so here would completely change § 3072 from a tax enforcement statute implementing § 3070(a) to one not only repugnant thereto but internally incongruous.

The indictment fails to charge a criminal offense and the District Court was correct in so holding.